# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Coy Farms, Inc. )
) Case No. 08-32265
Debtor(s) )
)

## DECISION AND ORDER

Before this Court is the Amended Application for the Approval of Attorney Fees filed by James E. Hitchcock, Esq. (Doc. No. 199). In his Application, Attorney Hitchcock, as legal counsel for Jewell Grain, a creditor, seeks to be paid, as a part of Jewell Grain's allowed claim, the amount of $45,000.00 as compensation for the legal services he rendered on behalf of Jewell Grain. Both the Debtor and the Trustee filed limited Objections to Attorney Hitchcock's Application for Fees. (Doc. No. 196 & 200).

After a Hearing held on the matter, the Court took the matter under advisement so as to afford the time to further consider the matters raised by the Parties. (Doc. No. 216). The Court has now had this opportunity, and finds that Attorney Hitchcock shall be allowed, as a part of Jewell Grain's allowed claim, attorney fees in the amount of $25,018.00. To this extent, the Objections to Attorney Hitchcock's Amended Application for the Approval of Attorney Fees are Sustained.

## FACTS

On May 2, 2008, the Debtor, Coy Farms, Inc., commenced a case in this Court under Chapter 12 of the United States Bankruptcy Code. (Doc. No. 1). Jewell Grain Company was disclosed by the Debtor as the holder of a secured claim in the amount $228,092.38. *Id.* In its bankruptcy schedules, the Debtor put forth that this claim was unliquidated and disputed. *Id.*

In re: Coy Farms, Inc.
Case No. 08-32265

Prior to filing for bankruptcy relief, the Debtor and Jewell Grain maintained a business relationship whereby the Debtor purchased on credit "crop input supplies" from Jewell Grain. (Cl. No. 6-1). As a part of their business relationship, the Debtor and Jewell Grain entered into a written agreement delineating their respective obligations. At some point, the Debtor defaulted on its obligation to Jewell Grain, triggering a term set forth in their written agreement whereby the Debtor became liable to pay Jewell Grain for its legal expenses, including reasonable attorney fees and court costs.

Attorney James E. Hitchcock represented Jewell Grain in matters, both prepetition and postpetition, related to the payment of Jewell Grain's claim against the Debtor. As between Jewell Grain and Attorney Hitchcock there existed a contingent fee agreement under which Jewell Grain agreed to pay Attorney Hitchcock 22½ % of any sums recovered.

On May 5, 2009, an Agreed Order was entered disposing of the claim held by Jewell Grain against the Debtor's bankruptcy estate. (Doc. No. 192). This Agreed Order provided, in relevant part: "The Claim of Jewell Grain shall be allowed in the amount of Two Hundred Thousand Dollars ($200,000.00), plus and including reasonable attorneys fees and costs as approved by the Court upon application by counsel for Jewell Grain." *Id*. Based upon this Order and his contingent fee agreement with Jewell Grain, Attorney Hitchcock filed his fee application with the Court, claiming that, as a part of Jewell Grain's claim, he was entitled to $45,000.00 in attorney fees, constituting 22½% of $200,000.00.

As a part of his application for attorney fees, Mr. Hitchcock submitted to the Court an itemization of the legal services, both prepetition and postpetition, he performed for Jewell Grain. In this itemization, Attorney Hitchcock set forth that his 'billable work' totaled 125.09 hours.

In re: Coy Farms, Inc.
Case No. 08-32265

## DISCUSSION

The application submitted to the Court by Attorney Hitchcock for attorney fees seeks the allowance of such fees as a claim against the Debtor's bankruptcy estate. Pursuant to 28 U.S.C. § 157(b)(2)(B), the determination as to the allowance or disallowance of claims against the estate is deemed to be a core proceeding. The Court, therefore, has jurisdiction to enter final orders and judgments with respect to the matters now before the Court. 28 U.S.C. § 157(b)(1).

In what is known as the American Rule, the prevailing party in a litigated matter must ordinarily bear the cost of their own legal fees and cannot have them assessed against the loser. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The Rule is "founded on the egalitarian concept of providing relatively easy access to the courts to all citizens and reducing the threat of liability for litigation expenses as an obstacle to the commencement of a lawsuit or the assertion of a defense that might have some merit." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 457 (3rd Cir. 2000). However, the American Rule may, and often is abrogated by statute. *Buckhannon Bd. & Care Home v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598, 602, 121 S.Ct. 1835, 1839, 149 L.Ed.2d 855 (2001).

Under the Bankruptcy Code, a creditor's attorney may look to two sources of authority when seeking to recover his legal fees as a claim against the estate. First, claims for legal fees may be allowed when provided for under any agreement and not otherwise disallowed by applicable law. 11 U.S.C. § 502(b).[1] Claims for postpetition legal fees may also be allowed for creditors who hold

---

[1] There exists a split of authority as to whether an unsecured creditor may include attorneys' fees incurred postpetition as part of its unsecured claim. *See, e.g., In re SNTL Corp.*, 571 F.3d 826 (9th Cir. 2009) (discussing different views). In *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, the Supreme Court partially answered the question, overturning what was known as the Fobain Rule which had held that attorneys' fees were not recoverable for litigating issues

In re: Coy Farms, Inc.
Case No. 08-32265

claims which are oversecured. 11 U.S.C. § 506(b); *In re Dow Corning Corp.*, 456 F.3d 668, 681 (6th Cir. 2006). Pursuant to this authority, this Court's order, dated May 5, 2009, provided that Attorney Hitchcock, as Jewell Grain's legal counsel, would be allowed a claim against the Debtor's estate for his legal fees.

Bankruptcy Rule 2016 provides that any "entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of the services rendered, time expended and expenses incurred, and (2) the amounts requested." In accordance with this Rule, Attorney Hitchcock filed with this Court his amended Application for Approval of Attorney Fees, requesting $45,000.00 in fees, and attaching to the application his contingency fee agreement with Jewell Grain and an hourly itemization of the legal services he performed for Jewell Grain.

For their objection to the Fee Application, neither the Trustee nor the Debtor contested Attorney Hitchcock's entitlement to receive attorney fees pursuant to this Court's order entered on May 5, 2009. Instead, the Trustee and the Debtor contested the reasonableness of the legal fees sought by Attorney Hitchcock. In particular, they contested Attorney Hitchcock's entitlement to a contingency fee of $45,000.00.

Bankruptcy law places a reasonableness limitation on the award of any attorney fees that are to be paid from the bankruptcy estate. 11 U.S.C. § 502(b); § 506(b); FED.R.BANKR.P. 2016. Likewise, this Court's order of May 5, 2009, provided that Attorney Hitchcock was only entitled to receive, as a part of Jewell Grain's claim, "*reasonable attorneys fees* and costs as approved by the Court . . . ." (Doc. No. 192) (emphasis added). A reasonable fee has been described as one which is

---

peculiar to bankruptcy law. 549 U.S. 443, 127 S.Ct. 1199, 1206, 167 L.Ed.2d 178 (2007).

Page 4

In re: Coy Farms, Inc.
Case No. 08-32265

"adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

When determining the reasonableness of legal fees to be paid from the estate, the lodestar method is the presumptive starting point. *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991) ("We join these courts in adopting the lodestar method of fee calculation for bankruptcy cases"). The failure of a court to address the lodestar method in calculating the reasonableness of an attorney's legal fees is considered legally erroneous. *In re Williams*, 357 B.R. 434, 440 (6th Cir. B.A.P. 2007). In *In re Boddy*, the Sixth Circuit Court of Appeals stated: "At a minimum . . . the bankruptcy courts must expressly calculate the lodestar amount when determining reasonable fees." 950 F.2d at 338.

Under the lodestar method, the reasonableness of an attorney's legal fees is determined by first ascertaining the number of hours reasonably expended by the attorney for his services and then multiplying that figure by a reasonable hourly rate. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007), *citing Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

In this matter, Attorney Hitchcock set forth, in his itemized billing statement, that he expended 125.09 hours of his time in representing Jewell Grain on matters related to its claim against the Debtor. No party contested this figure, and upon reviewing Mr. Hitchcock's billing statement, the Court, having observed the progression of this case, cannot find any of the entries to be unreasonable. It will, thus, be accepted that, under the lodestar method for calculating attorney fees, Attorney Hitchcock is entitled to be compensated for 125.09 hours of legal services.

For the multiplier, the hourly billing rate, Attorney Hitchcock did not set forth in his itemized fee statement the hourly rate he charges for his legal services. Nor did Attorney Hitchcock offer to the Court what he viewed as a reasonable hourly rate, with Attorney Hitchcock continuing to

Page 5

**In re: Coy Farms, Inc.**
**Case No. 08-32265**

maintain that he was entitled to be compensated in accordance with his contingency fee agreement with Jewell Grain. Instead, for a billing rate, the only bellwether the Court has before it is the hourly rate assessed by Debtor's legal counsel who related to the Court that he charged $200.00 per hour for his legal representation.

For the lodestar method, to "arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). For this purpose, the Court, having had the opportunity to observe the progression of this case, as well as other cases in which he is legal counsel, is convinced that the hourly rate charged by Debtor's legal counsel is fair and reasonable. In congruity, the Court has no reason to question that Attorney Hitchcock, given his skill and experience, is not similarly entitled to charge the hourly rate assessed by Debtor's legal counsel.

Accordingly, for Attorney Hitchcock, the lodestar method for calculating legal fees results in the sum of $25,018.00, as derived from 125.09 hours of legal services charged at the rate of $200.00 per hour. However, as set forth, Attorney Hitchcock strongly maintains that, in accordance with his contingency fee agreement with Jewell Grain, he is entitled to be awarded, as a part of Jewell Grain's allowed claim, $45,000.00 in legal fees.

The lodestar method for calculating fees, whereby the number of hours of legal services is multiplied by a reasonable hourly rate, is subject to modification, and may be adjusted up or down depending on a number of factors. These factors may include:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) *whether the fee is fixed or contingent*; (7) time limitations

imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974), cited with approval by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 430 fn. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Consistent with the sixth factor, cited above, attorneys, such as Attorney Hitchcock, who undertake representation based upon a contingency fee agreement may have their fees adjusted upward under the lodestar method. The Court, however, does not believe that the situation before it calls for such an upward adjustment, especially in light of the following Supreme Court precedent.

In *City of Burlington v. Dague*, the Supreme Court held that under a fee-shifting statute, an adjustment in the lodestar method is not permitted for a contingency fee agreement. 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In this way, the Supreme Court has limited the application of the above factors, noting that consistent with the lodestar method "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 fn. 9, 103 S.Ct. 1933. The Supreme Court has also emphasized that an upward adjustment in fees, using the above considerations, is only permissible in "rare" and "exceptional" cases. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

While strictly speaking, Attorney Hitchcock seeks his contingency fee through this Court's order dated May 5, 2009, and not under a fee shifting statute as was the case in *City of Burlington v. Dague*, there is simply nothing 'rare' or 'exceptional' about the facts of this case which would

warrant the allowance of a legal fee against the Debtor's estate based upon a contingency fee agreement.

A contingency fee agreement is defined as a fee agreement under which the attorney will not be paid unless the client is successful. It serves two main purposes. It allows plaintiffs who cannot afford to pay a lawyer up-front to pay the lawyer out of any recovery. It also compensates the attorney for the risk that the attorney will receive no fee whatsoever if the case is lost. Posner, Economic Analysis of Law § 21.9 (4th ed.1992).

Attorney Hitchcock's contingency fee agreement with Jewell Grain did not appreciably serve either of these functions. Importantly, nothing in this matter indicated that Jewell Grain could not afford to initially pay Attorney Hitchcock's legal fees. Similarly, Jewell Grain was likely to recover on its claim against the Debtor given that its claim was fully secured. Attorney's Hitchcock's risk in being unable to recover his legal fees was, therefore, minimal.

Even these considerations aside, this fundamental aspect of Attorney Hitchcock's request for attorney fees against the Debtor estate prominently stands out: Regarding the contingent fee agreement, there was no privity of contract between the Debtor and Attorney Hitchcock. *See Randelman v. Fidelity National Title Insurance Co.*, 465 F.Supp.2d 812, 818 (N.D.Ohio 2006) ("Only a party to a contract or an intended third-party beneficiary may bring an action on a contract in Ohio."). Attorney Hitchcock's contingency fee agreement was, instead, with Jewell Grain. As between the Debtor and Jewell Grain no contingency fee agreement existed, with the Debtor only agreeing to pay Jewell Grain the reasonable value of any legal fees Jewell Grain incurred in enforcing its claim. Attorney Hitchcock, thus, had no expectation that the Debtor would be liable to pay his contingency fee. The result should not change simply because the Debtor sought relief in this Court.

Page 8

In re: Coy Farms, Inc.
Case No. 08-32265

In conclusion, the Court, for the reasons set forth in this Decision, holds that, as a part of Jewell Grain's claim against the Debtor's bankruptcy estate, Attorney Hitchcock is not entitled to make a claim based upon his contingency agreement with Jewell Grain. Instead, Attorney Hitchcock's claim for his legal fees will, based upon this Court's order of May 5, 2009, be limited to the reasonable value of those services; to wit: $25,018.00 as computed under the lodestar method. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the limited Objections to Attorney Hitchcock's Application for Fees, as filed by the Debtor and the Trustee, be, and are hereby, SUSTAINED.

**IT IS FURTHER ORDERED** that, pursuant to this Court's Order dated May 5, 2009, (Docket No. 192), Attorney Hitchcock shall be allowed, under his Amended Application for the Approval of Attorney Fees, a claim for his legal services in the amount of $25,018.00.

Dated: September 25, 2009

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

# CERTIFICATE OF SERVICE

Copies were mailed this 25th day of September 2009 to:

Coy Farms, Inc.
21016 US Highway 6
Bryan, OH 43506

Steven L Diller
124 E Main St
Van Wert, OH 45891

Jewell Grain Company
P.O. Box 30008
Jewell, OH 43530

Suzanne Cotner Mandros
PO Box 2534
Toledo, OH 43606

James E Hitchcock
650 W 1st St
Defiance, OH 43512-2102

                                             /s/Jennifer S Huff
                                       Deputy Clerk, U.S. Bankruptcy Court